IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| United States of America, | ) | C/A NO. 3:13-2444-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION and ORDER** |
| v. | ) | |
| | ) | |
| Various Vehicles and Funds Described | ) | |
| in Attachment 1, | ) | |
| | ) | |
| Defendants *In Rem*. | ) | |
| _____ | ) | |

This matter is before the court on the verified *in rem* complaint of the United States seeking civil forfeiture of assets allegedly derived from certain specified illegal activities. *See* Second Amd. Verified Compl., ECF No. 71 ("Complaint"). The seized assets are fourteen (14) vehicles and funds from two bank accounts.

Verified Claims have been filed by Alibek Turkayev, individually and d/b/a Automotive Exports; KTNA Financial, Inc.; Chuan-Chuan Hsieng, individually; and CCHJ International, Inc. ("Claimants"), claiming ownership interests in the various vehicles and funds. Claimants have filed motions to dismiss, arguing, *inter alia*, that the Government's allegations of mail and wire fraud and money laundering fail as a matter of law because the Complaint omits essential elements and fails to comply with Rule 9(b)'s pleading requirements; that the Government is unable to establish violation of export laws; and that the Complaint does not allege with sufficient particularity how the bank accounts at issue facilitated the allegedly unlawful activities. *See* ECF Nos. 90-1 & 96-1 at 2-

1

3.[1]  The motions seek dismissal of the Complaint and release of the vehicles and funds.

### I. STANDARDS

#### A. Complaint – Forfeiture *In Rem*

The Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supp. R.") are applicable to *in rem* forfeiture actions. The Federal Rules of Civil Procedure ("FRCP") apply so long as they are not "inconsistent with" the Supplemental Rules. Supp. R. A(2). Supplemental Rule G(2)(f) provides that a civil *in rem* forfeiture complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." The Government must "state[ ] the circumstances giving rise to the forfeiture claim with sufficient particularity" to allow a claimant to conduct a "meaningful investigation of the facts and draft[ ] a responsive pleading." *United States v. Mondragon*, 313 F.3d 862, 866 (4th Cir. 2002). "[T]he Government's forfeiture claim can advance forward in the face of a . . . motion to dismiss even if the Government's complaint does not provide all the facts that would allow the Government to ultimately succeed in the forfeiture proceeding." *United States v. 630 Ardmore Drive*, 178 F. Supp. 2d 572, 581 (M.D.N.C. 2001). In assessing whether the Government has provided sufficient allegations to support a nexus between the alleged criminal offense and the Defendants *In Rem*, the court must look to the totality of the circumstances. *Mondragon*, 313 F.3d at 866.

Although the pleading standard under Supp. R. G(8)(b) is higher than the standard for FRCP 8(a), the pleading requirements are satisfied if the Government pleads enough facts to support a

---

[1] Separate dismissal motions were filed by Claimants Turkayev and Hsieng, KTNA Financial, Inc., and CCHJ International, Inc. ECF Nos. 90 & 96. However, these motions are virtually identical.

"reasonable belief" that the Government will be able to meet its burden of proof at trial. *See United States v. Real Property Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1193 (9th Cir. 2004) (noting that the Government "is not required to prove its case simply to get in the courthouse door").

To meet its ultimate burden of proof, the Government must prove by a preponderance of the evidence a "substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). However, the Government initially need not produce all evidence that will be introduced at trial and may instead "gather [ ] evidence after the filing of a Complaint for forfeiture to establish, by a preponderance of the evidence, that [the] property is subject to forfeiture." 18 U.S.C. § 983(c)(2).

### B. Motion to Dismiss

"A claimant who establishes standing to contest forfeiture may move to dismiss the action under Rule 12(b)." Supp. R. G(8)(b)(i). In assessing a motion to dismiss, a court "must accept as true all well-pleaded allegations and must construe the factual allegations in the light most favorable to the plaintiff." *Hall v. Virginia*, 385 F.3d 421, 427 (4th Cir. 2004) (internal quotations and citation omitted). *See also Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (same). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).

## II. BACKGROUND

In the light most favorable to the Government, the facts are that Claimants are either individual brokers or corporations involved in exporting luxury automobiles from the United States to foreign jurisdictions. The Government contends that luxury automobiles sold in the United States often carry a higher purchase price, and high taxes and tariffs overseas. Accordingly, individuals

will frequently attempt to export new vehicles from the United States to foreign countries. To deter the purchase of luxury automobiles in the United States for immediate export to foreign countries, many automobile manufacturers enter into contractual relationships with their licensed dealerships. These contracts prohibit dealerships from selling a vehicle to individuals or companies who intend to export that vehicle. As a result of these contractual relationships and in an attempt to avoid financial and other penalties assessed by manufacturers, dealerships take steps to protect themselves from purchasers who intend to export a new vehicle by requiring new vehicle purchasers to sign agreements acknowledging an automobile manufacturer's export policy. Manufacturers and dealerships maintain lists of individuals and corporations believed to be involved in exporting vehicles overseas in contravention of the non-export agreements. Dealerships are generally prohibited by manufacturers from selling vehicles to individuals and companies appearing on these lists.

The Government contends that Claimants pursue the purchase of luxury automobiles through "straw purchasers" in an attempt to circumvent these prohibitions and export restrictions. The Government alleges that these "straw purchasers" generally purchase the vehicles and almost immediately turn the vehicles over to exporters for transfer overseas. The Government maintains the Claimants' actions cause false certificates of title and registrations to be issued in the United States and, ultimately, the entry of false information into an Electronic Export Information (EEI) forms submitted through the Automated Export System (AES), a centralized computer system through which export shipment data required by multiple agencies is filed electronically with the U.S. Customs and Border Protection Agency of the Department of Homeland Security.

The Government alleges that Claimants' actions violate several federal criminal statutes,

including those dealing with international money laundering (18 U.S.C. §§ 1956(a)(2)(A), 1956(h)), wire and/or mail fraud (18 U.S.C. §§ 1341, 1343), smuggling (18 U.S.C. § 554), and submission of false or misleading information through the Shippers Export Declaration or Automated Export System in violation of 13 U.S.C. § 305.

Claimants contend that failure to abide by a private contract does not give rise to criminal liability; that the Government's mail and wire fraud allegations omit essential elements and therefore fail to comply with Supp. R. G(2) pleading requirements; that the Government cannot establish violation of export laws; and that the Government does not allege with specific particularity how the seized accounts facilitated the alleged unlawful activity.

### III. Discussion

The court finds that the Complaint sets forth in sufficient detail the alleged schemes and Claimants' participation therein, and provides sufficient facts relating to the bank accounts in question to survive Claimants' motions to dismiss. The Government need not, at this time, present adequate evidence to establish the forfeitability of the property, but rather must allege facts supporting a reasonable belief that it will be able to meet its burden of proof. The question is whether the facts alleged in the Complaint, assumed to be true, show that Defendant Vehicles and Funds are either property involved in, or traceable to, violations of money laundering statutes (18 U.S.C. §§ 1956(a)(2)(A) and 1956(h)); constitute or are derived from proceeds traceable to violations of 18 U.S.C. §§ 1341, 1343, and 1349 (mail fraud, wire fraud, and conspiracy); are "value" of "merchandise exported or sent from the United States contrary to law," were "used to facilitate" the exporting or sending of such merchandise," or are "merchandise . . . attempted to be exported or sent from the United States contrary to law" (19 U.S.C. § 1595a(d)).

Claimants do not deny their involvement in the purchase and export of vehicles from the United States.  Claimants' main argument is that the Government's mail and wire fraud allegations fail as a matter of law because they omit certain essential elements.  Claimants argue that the Complaint fails to allege that Claimants or "any undisclosed purchaser" had the specific intent to defraud, or made material misrepresentations in purchasing the vehicles.  Yet the Complaint outlines a specific scheme to defraud dealerships and manufacturers, both of whom have property interests in the vehicles in question.  By the use of "straw purchasers," material information was concealed from the dealerships and manufacturers relating to the identity of the "true" purchaser and the purchaser's export intentions.  These material misrepresentations certainly deprived the dealerships and manufacturers of property and injured the victims via sale of the Defendant Vehicles which otherwise may not have occurred.

Taken in the light most favorable to the Government, the Complaint also adequately alleges violation of export laws.  Claimants' argument that "given the recent and dizzying interpretations of regulations surrounding the export of 'new' versus 'used' cars, it is virtually impossible to comply with information reporting requirements necessary to export vehicles," ECF No. 90-1 at 14, fails to show omission of any essential element.

Finally, as to the Defendant Funds, the Complaint alleges with sufficient particularity that the Government will be able to show at trial that the bank accounts in question are subject to forfeiture as property involved in, or traceable to money laundering.  The Complaint's allegations support a reasonable belief that the Defendant Funds are traceable to international funds deposited to Claimant CCHJ International, Inc.'s account for the purpose of supporting the alleged fraudulent scheme.

### III. CONCLUSION

For the reasons noted above, Claimants' motions to dismiss (ECF Nos. 90 & 96) are **denied**.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie  
CAMERON McGOWAN CURRIE  
SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina  
November 20, 2014